UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRENEL LORME,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. 1:26-cv-2692

Honorable Robert J. Jonker

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Pet., ECF No. 1). The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus and order his immediate release from custody (*id.* at PageID.13–14). After reviewing the parties' submissions, the Court concludes that the petition is properly dismissed without prejudice for failure to exhaust administrative remedies.

**I. BACKGROUND**

Petitioner is a native and citizen of Haiti (Pet., ECF No. 1 at PageID.1.) Petitioner entered the United States in 2021, was apprehended by ICE, and was released on his own recognizance under a Form I-220A (*id.*). Ordinarily, an I-220A "form does not confer parole or any other immigration benefit; it merely reflects a decision to release an individual from custody pending further removal proceedings." *Quintero v. Field Off. Dir. of Miami ICE Field Off.*, No. 25-22428-CIV, 2025 WL 2588099, at *4 (S.D. Fla. June 23, 2025), *subsequently dismissed as moot,* No. 25-12147, 2025 WL 2589756 (11th Cir. Sept. 5, 2025); *see also Ebu v. Tindall*, No. 3:25-CV-779-

RGJ, 2026 WL 252899, at *3 (W.D. Ky. Jan. 30, 2026) (discussing Form I-220A release). "Petitioner remained at liberty for approximately five years, until September 1, 2026, when [ICE] re-detained him. Petitioner is presently detained at the North Lake Correctional Facility in Baldwin, Michigan. His removal proceedings remain pending" (Pet., ECF No. 1 at PageID.2). "Petitioner challenges Respondents' revocation of his longstanding, government-authorized liberty and his return to physical confinement without constitutionally adequate notice or process and without compliance with the governing regulation for revocation of release under 8 C.F.R. § 236.1(c)(9)" (*id.*). Petitioner's request for release fails for the reasons set forth below.

## II. HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## III. ANALYSIS

Petitioner argues that Respondents violated his Fifth Amendment right to due process by revoking his grant of release on his own recognizance without properly completing the "specific section for cancellation of the Order of Release" on his I-220A form (Pet., ECF No. 1 at PageID.10–13), resulting in detention "in violation of the INA" and *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Petitioner admits that "Respondents may possess authority to revoke Petitioner's release, but the existence of revocation authority does not permit the Government to extinguish an existing custody determination merely by arresting Petitioner and returning him to physical confinement without first providing the process required by law" (Pet.,

ECF No. 1 at PageID.11). Petitioner explains that "Respondents returned Petitioner to custody without first properly revoking his existing release in accordance with 8 C.F.R. § 236.1(c)(9)," thereby failing "to follow their own governing regulation in violation of the rule established in *Accardi*" (*id.* at PageID.13). Finally, Petitioner cites authority in which federal courts "across the country have ordered the release of individuals" from ICE custody after the agency failed to follow its own regulations under *Accardi*. *See Ebu*, 2026 WL 252899, at *5 (collecting cases).

Petitioner's arguments fail to justify release here. Assuming without deciding that Petitioner could establish a violation of certain agency procedures under *Accardi*, Petitioner "winning on a procedural claim is one thing; getting the remedy he wants is another." *See Nwosu v. Warden, Fla. Soft Side S.*, 832 F. Supp. 3d 1222, 1232 (M.D. Fla. 2026); Prof. Thomas W. Merrill, *The Accardi Principle*, 74 Geo. Wash. L. Rev. 569, 603 (2006) ("Once we have identified the source of the *Accardi* principle in delegated legislative rulemaking, the next question concerns the mechanisms available to enforce this agency duty."). Petitioner "seeks immediate release from custody. That is a bridge too far. Habeas corpus is, at its core, governed by equitable principles. And equity counsels against the drastic remedy of immediate release here" for two reasons. *Id.* (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.")). First, "the natural remedy for a procedural shortcoming is a procedural fix. When an agency skips a step in its own rulebook, the typical judicial response is to force the agency to go back and do its job right—not to throw open the jailhouse doors." *Id.* "Second, the writ of habeas corpus is fundamentally forward-looking. It asks whether a petitioner's confinement is lawful today and whether it can lawfully continue tomorrow." *Id.*

Applying the above principles, the Court concludes that release is an inappropriate exercise of the Court's equitable powers here. Even assuming a procedural violation of the agency's rules, a "straightforward fix can easily [bring Petitioner's] detention into constitutional compliance." *Id.* The government has offered to provide an individualized hearing to determine whether Petitioner should be released on bond consistent with the Sixth Circuit's opinion in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) (*see* Resp. Br., ECF No. 4 at PageID.34 (citing *Lopez-Campos*, acknowledging the availability of an individualized bond hearing, but stating that "Petitioner must move the immigration court for that hearing, however, and exhaust administrative remedies"). Such a hearing would provide Petitioner with exactly the kind of process he says he wants. The Court will thus dismiss the petition here for failure to exhaust administrative remedies. *See Vasquez-Boyatt v. Mullin*, No. 2:26-CV-00117, 2026 WL 1453386, at *3 (W.D. Mich. May 22, 2026) (dismissing a petition without prejudice for lack of exhaustion after Respondents expressed their intention to comply with *Lopez-Campos* and afford a custody redetermination hearing"); *Fajardo Reyes v. Lyons*, No. 1:26-CV-01591, 2026 WL 1560575, at *2 (W.D. Mich. May 22, 2026) (same); *Duarte v. Raycraft*, No. 1:26-CV-1789, 2026 WL 1719378, at *3 (W.D. Mich. June 15, 2026) (same).

*Accardi* does not compel a different result, even assuming the re-detention process violated the agency's rules. Petitioner relies principally on 8 C.F.R. § 236.1(c)(9) to support his claims that his re-detention violated the agency's rules (*see* Pet., ECF No. 1 at PageID.1–13). But the unstated assumption of that argument is that Respondents had no power to revoke Petitioner's release before establishing that he violated a condition of his "order of release on recognizance" (*see* Form I-220A, ECF No. 1-1 at PageID.20 (noting that the order of release may be cancelled because the "alien failed to comply with the conditions of release" or the "alien was taken into custody for

removal”)). Perhaps that is correct, but it is certainly not the only plausible reading of the provision. To the contrary, the first sentence of the provision says the release “may be revoked at any time in the discretion of [various categories of officials].” *See* 8 C.F.R. § 236.1(c)(9). There is no requirement limiting the exercise of that discretion to cases of an established breach of the order’s terms. *See id.* The second sentence of the provision reinforces this point by reciting that an actual breach may lead to other consequences, such as preventing cancellation of any bond. *See id.* But there are no such limiting conditions when it comes to discretionary revocation of release status itself. *See id.*

It is ultimately not necessary in this case to delve any deeper into Respondents’ discretionary decision to revoke Petitioner’s order of release, even assuming the Court has jurisdiction to review that discretionary call at all. That is because even assuming some procedural shortfall justifying judicial relief, release from custody is not the only form of judicial relief available. *Nwosu,* 832 F. Supp. 3d at 1232 (“[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court[.]”). The alleged procedural violations noted by Petitioner to support his *Accardi* argument lead “to the same remedial dead-end” with respect to release discussed above: a “procedural foul typically calls for a procedural fix.” *Id.* For the “same equitable and practical reasons already discussed, the Court will not order [Petitioner’s] immediate release.” *Id.* The Court dismisses the petition without prejudice so that Petitioner may exhaust his administrative remedies by seeking an individualized bond hearing consistent with *Lopez-Campos*. Should Respondents fail to provide such a hearing, despite their commitment to do so, Petitioner is free to bring a new petition for habeas corpus relief.

## IV. CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: October 21, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge